## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LARRY BRATT, #168687 | * | |
| Plaintiff | * | |
| v | * | Civil Action Case No. CCB-10-2253 |
| WEXFORD HEALTH SOURCES, INC., et al. | * | |
| | * | |
| Defendants | *** | |

## MEMORANDUM

Larry Bratt ("Bratt") filed the instant complaint against Wexford Health Sources, Inc. ("Wexford"), Greg Davis,[1] Dr. Isaias Tessema[2] and Gary Maynard[3] on August 13, 2010, alleging defendants violated his constitutional rights under 42 U.S.C. § 1983.  Motions to Dismiss, or in the Alternative for Summary Judgment have been filed by counsel on behalf of Greg Davis and Dr. Isaias Tessema (the "Medical Defendants") (ECF No 23), Wexford, (ECF No. 29), and Secretary Gary Maynard (ECF No. 45).  Affidavits and materials outside the dispositive pleadings have been considered and notice provided so that Defendants' motions (ECF Nos. 23, 29, and 45) shall be considered as motions for summary judgment. *See* Fed. R. Civ. P. 12 and 56.  Bratt, who is self-represented, has filed cross motions for summary judgment (ECF Nos. 34 and 47).[4]  The Medical

---

[1]  Greg Davis is a health administrator for Correctional Medical Services (CMS), a private corporation that contracts with the State of Maryland to provide medical services to inmates at certain state institutions.

[2]  Dr. Isaias Tessema's last name is correctly spelled by Bratt as "Tesseme."  From April of 2008 to the present, he has served as CMS Regional Director in the Hagerstown region, and acting Regional Medical Director for CMS in the Western region. ECF No. 23, Exhibit A, ¶ 1. The Hagerstown region includes the Roxbury Correctional Institution ("RCI") where Bratt was incarcerated before he filed the instant complaint.  The Western region includes  Western Correctional Institution (WCI) where Bratt was confined at the time he filed the complaint. *See id.* According to the DPSCS Inmate Locator, Bratt is presently confined at the Jessup Correctional Institution.  *See* http://www.dpscs.state.md.us/inmate/search.

[3]  Gary Maynard is Secretary of the Department of Public Safety and Correction Services ("DPSCS").

[4]  On January 8, 2011, Bratt filed a "Motion for Summary Judgment" in which he moved for judgment against Secretary Maynard alleging default for failing to timely answer the complaint. ECF No. 27. Secretary Maynard was

Defendants and Wexford have filed replies in opposition (ECF Nos. 36 and 38) to Bratt's Motion for Summary Judgment.

The matter is briefed and ready for disposition; a hearing is deemed unnecessary.  *See* Local Rule 105.6.   For reasons to follow, summary judgment shall be granted in favor of defendants.

## I.      Background

Bratt claims defendants provided him constitutionally inadequate medical care in contravention of his rights under the Eighth Amendment when they denied him hip replacement surgery recommended by other physicians.  He asks the court to "order Wexford (CMS) to allow him to have hip replacement surgery and award him $500,000.00 in punitive and compensatory damages."  Complaint, p. 4, ¶ III.

### A. Wexford

Wexford is the utilization review contractor for the State of Maryland. Wexford provides onsite utilization review services and reviews requests for referrals to specialists and recommendations for offsite care or hospitalization.  ECF No.  29, Exhibit 1, Affidavit of Joseph Ebbitt, Manager of Risk Management. Wexford does not receive care requests directly from inmates, nor does it receive copies of inmates' charts or medical records. Wexford does not directly provide medical care or clinical services to inmates.  *See id.* ¶¶ 6 and 7.

"Pursuant to its contract with DPSCS, Wexford receives requests from Correctional Medical Services, Inc. (CMS), through the site medical director, and then acts upon such requests. Requests for offsite services require collegial review which is initiated by the site medical director."  *Id.*, ¶ 8. As a matter of contract procedure and mandated by DPSCS, where a total joint replacement is

---

granted an extension of time to file a response (ECF Nos. 28 and 31) and Bratt's motion, which is properly considered as a motion for default judgment, will be denied by separate order as moot.

recommended, an evaluation must first be performed by a physiatrist[5] to assess the inmate's activities of daily living, pain management, and whether physical therapy might be appropriate. *See id*. ¶ 12.  After completion of the assessment and any recommended physical therapy, an orthopedist again evaluates the inmate to determine whether surgery is needed. *See id.*¶ 13.  Wexford does not schedule appointments for the services that it has approved. *See id.*

¶ 32.

### B.  Medical Defendants

In his affidavit,[6] Dr. Tessema summarizes Bratt's relevant medical history as follows. Bratt has a history of prostate cancer and osteoarthritis ("OA") of the hip and knee.  He has presented frequent complaints of hip pain.[7]   Since July, 2009, Bratt has been treated with Naprosyn and Mobic, non-steroidal anti-inflammatory ("NSAIDs") medications commonly used to treat the pain associated with osteoarthritis.  Bratt has also been treated with Robaxin, a muscle relaxant, and glucosamime chondroitin, but reported no significant pain relief.  When the Mobic began to bother Bratt's eyes, he was given Extra Strength Tylenol instead.   ECF No. 23, Exhibit A, Affidavit of Dr. Tessema, ¶3.

On August 12, 2009, Wenelisa Navarro, M.D. evaluated Bratt for complaints of moderate and burning  lumbosacral, right hip, right knee, and right leg pain. Dr. Navarro prescribed Neurontin, a medication used to treat nerve pain which is often characterized as a burning pain.  *See*

---

[5]   A physiatrist is a medical doctor who specializes in physical medicine which includes the diagnosis and treatment of illnesses and injuries that affect the nerves, muscles, and bones.  *See e.g*. website of the American Academy of Physical Medicine of Rehabilitation. http://www.aapmr.org/patients/aboutpmr/Pages/physiatrist.aspx.

[6] Dr. Tessema's affidavit contained a typographical error and was corrected.  ECF Nos. 23 and 34.

[7] Bratt indicates that he started to complain about excruciating pain in his right hip in July of 2009.  ECF No. 4, Plaintiff's Motion for Summary Judgment, p. 5.

*id*. ¶ 4. [8]

On November 4, 2009, Suresh Menon, M.D discontinued Bratt's Naprosyn after Bratt noted the medication was not alleviating his pain. Dr. Menon instead prescribed Ultram, a synthetic opiate analgesic that changes the way the body senses pain. On November 18, 2009, the Ultram was discontinued because the medication upset Bratt's stomach and he was restarted on Naprosyn. *See id*. ¶ 5. Bratt was given steroid injections in his left and right gluteal (buttocks) areas to treat his back and hip pain on January 15, 2010, July 22, 2010, and October 8, 2010. He reported the injections provided little relief. *See id*. ¶ 6.

Bratt was allowed to have his meals brought to his cell as needed when his OA became especially painful and after his steroid injections. A bottom bunk was also recommended for him. On September 25, 2009, Bratt was provided a back brace to help with his pain. That same day, he refused a knee brace. On November 3, 2010, Plaintiff refused a cane to assist his ambulation. [9]

On August 12, 2009, Dr. Navarro submitted a consultation request for an orthopedic evaluation for Bratt. On November 4, 2009, Dr. Menon ordered an x-ray of Bratt's right hip; the x-ray was taken on November 13, 2009 and revealed degenerative changes. *See id*. ¶ 8  On February 1, 2010, Dr. Menon submitted another orthopedic consultation request. Wexford approved this request. *See id*.[10]

On March 10, 2010, Robert Cendo, M.D., an orthopedic surgeon, examined Bratt. Bratt's x-ray showed that his hip bones were almost rubbing against each other, with no cushioning between

---

[8]   Bratt claims in his motion for summary judgment that Dr. Narvarro requested an orthopedic consultation for him on August 12, 2009, but the request was never processed by CMS. ECF No. 34, Memorandum p. 6.

[9]   Bratt claims the cane was too long to benefit him. ECF No. 34, Letter of November 14, 2010 from Bratt to Lauri Russell, WCI Medical Director.

[10]   Neither Dr. Tessema nor Greg Davis are affiliated with Wexford. They do not have any control over Wexford's approval process. ECF No. 23, Exhibit A, n. 4.

them. Dr. Cendo advised a hip replacement, but cautioned Bratt to consider the risks involved with surgery and the fact that his hip joint was not yet completely bone-to-bone before making a decision.  ECF No. 23, Exhibit B, pp. 30-34.

On March 15, 2010,  Bratt submitted a Sick Call Request Form, requesting to speak to Dr. Menon about Dr. Cendo's evaluation and to discuss when his hip surgery would be scheduled.   Dr. Menon submitted a consultation request form for Bratt's total replacement of his right hip. ("THR").  Exhibit A, ¶ 9.   On March 22, 2010,  Dr Menon noted on Bratt's medical chart that Wexford had denied approval for surgery because a physiatrist must evaluate Bratt prior to consideration for the surgical procedure. ECF No. 23, Exhibit B, pp. 30-31.

On May 6, 2010,  Cornell Shelton, M.D., a physiatrist, examined Bratt and recommended him for twice weekly physical therapy for four to six weeks and Ultram for pain.  Dr. Shelton also recommended cortisone (steroid) injections. Dr. Shelton noted that, if Bratt showed no improvement, he would need a total hip replacement (THR).  ECF No. 23, Exhibit A, ¶ 10; Exhibit B, pp. 35-39, 46-53.

From June 1 until July 20, 2010, Bratt followed a course of physical therapy.  He refused further physical therapy after that because it aggravated his hip pain. On July 15, 2010, Dr. Menon submitted another consultation request for a THR evaluation.

On July 19, 2010, Dr. Menon presented Bratt's case to Wexford. At that time, Dr. Menon was told that the procedure had to be reviewed by Dr. Tessema before Wexford could approve a THR.   On August 3, 2010, Dr. Tessema discussed Bratt's case with Robert T. Smith, M.D., Wexford's Utilization Management Medical Director. Drs. Smith and Tessema decided to continue to follow-up with specialists, including the orthopedic surgeons, physiatrist, and physical therapists,

and consider their recommendations.  ECF No. 23, Exhibit A, ¶ 11; Exhibit B, pp. 54-56, 59-69, 72, 111-124.

On August 6, 2010, Bratt was transferred from RCI to WCI. On August 9, 2010, Dr. Menon recorded in Bratt's medical chart that he had received an e-mail from Dr. Smith which requested that he present Bratt's case again at the next collegial review.  Dr. Menon informed Dr. Smith that Bratt had been transferred to WCI.  Dr. Smith responded that he would discuss Bratt's case with WCI medical staff at their next collegial review.  ECF No. 23, Exhibit A, ¶ 12.

On September 7, 2010, Ava Joubert, M.D. requested an orthopedic evaluation consultation for Bratt to receive a THR.  *See id.*  ¶ 13. On September 27, 2010, Bratt was examined by orthopedic surgeon Scott Worrell, M.D., who observed Bratt had moderate to severe right hip OA with poor tolerance for oral medications.  Dr. Worrell recommended weaning Bratt off Neurontin and prescribed Mobic.  Dr. Worrell stated that he would schedule Bratt for a right hip steroid injection under fluoroscopic guidance [11] to give Plaintiff additional pain relief and to lessen the need for NSAIDs.   Bratt asked Dr. Worrell about proceeding directly with a THR. Dr. Worrell "discussed with him the value of postponing it until he is at least 60 years old buying him extra time and longevity with his arthroplasty." ECF No. 23, Exhibit B, p. 80.  Bratt concurred.[12]  *See id.*

On September 28, 2010, Drs. Smith and Worrell discussed Bratt's case. Dr. Worrell suggested that Bratt may not have had sufficient pain medication prior to starting physical therapy for the therapy to have benefited him. Exhibit A, ¶ 13.  A repeat x-ray of Plaintiff's right hip, taken on October 7, 2010, showed severe degenerative changes with OA.  Exhibit A, ¶ 14.

---

[11]   Flouroscopy is an x-ray procedure that produces immediate images and motions on a screen.  ECF No. 23, Tessema Affidavit, Exhibit A, n. 12.

[12]   Bratt disputes that he concurred with Dr. Worrell's recommendation to delay surgery.  ECF No. 34, Memorandum, p. 10; ECF No. 45, Exhibit A, pp. 7-8.

On October 8, 2010, Dr. Worrell gave Plaintiff a steroid injection in his hip. On October 13, 2010, Dr. Joubert reported that Dr. Worrell said Bratt had a partial response to the injection.  Dr. Worrell also recommended physical therapy, which Dr. Joubert ordered that day. Exhibit A, ¶ 14. Bratt started physical therapy on October 28, 2010.  He told the physical therapist that his pain had decreased some but described it as "high."  Exhibit  A, ¶ 15; Exhibit B, p. 129.

On November 4, 2010, Bratt was evaluated by Matthew Alloway, D.O. for any recurrence of prostate cancer to eliminate the possibility that Bratt's right hip pain might be the result of metastasis.  Dr. Alloway recommended a total body bone scan; if the scan was normal, then Bratt's hip could be treated as an orthopedic injury.  On November 24, 2010, Bratt underwent a whole body bone scan which revealed no evidence of metastasis. Another referral for a THR evaluation was submitted for Wexford approval. Exhibit A, ¶ 16.  The THR surgery was approved in December of 2010. [13]  ECF No. 45, Exhibit A, Affidavit of Tenille Winters,

¶ 3.

### C.  Gary Maynard

Bratt does not allege that Secretary Maynard personally participated in the events giving rise to his complaint.  Secretary Maynard appears to be named as a defendant based on Bratt's assumption that the Department of Public Safety and Correctional Services (DPSCS) can authorize certain medical procedures.  ECF No. Supplement to Complaint, p. 1.   Division of Correction procedures  require a pre-certification process that encompasses collegial review (between doctors)

---

[13]    It is unclear whether the surgery has been performed to date.  According to Bratt, on January 28, 2011, he was transferred to Jessup Correctional Institution Regional Hospital to await surgery at Bon Secours Hospital.  On February 1, 2011, Bratt "caught a serious infection while in the hospital due to its unsanitary conditions."  ECF Nos. 47, 49, pp 1-2. On February 4, 2011, he was operated on for an abscess on the left buttocks.  *Id*. On February 25, 2011, Dr. Krishna Swamy (Dr. Swamy), an orthopedic surgeon at Bon Secours informed Bratt that due to the infection, the operation could not be performed until late May or June of 2011.  On April 15, 2011, Dr. Swamy indicated that Bratt was to be scheduled for surgery.  Bratt states that Dr. Swamy wants to "scope" his knee four weeks after the surgery to improve recovery and make walking safer.  Bratt states that he has fallen at JCI while awaiting surgery.  *See id*.  If in presenting these factual allegations Bratt intends to allege new claims of constitutional infringement (ECF No. 50), he may do so by filing a separate complaint.  A prisoner civil rights information and forms packet will be sent to him.

for recommendations involving surgery for inmates.  ECF No. 45, Exhibit B, Division of Correction

Medical Evaluation Manual, Excerpt Chapter 5, pp. 1-2.

On August 12, 2010, Bratt filed a request for an Administrative Remedy Procedure request

(ARP) at WCI in which he asked the Warden to "contact his superiors and demand they inform Dr.

Tessema of his responsibility to provide him with medical care" as was recommended by other

physicians. Bratt stated:

> For the past year I have been complaining about my right arthritic hip. RCI medical
> sent me to see Dr. Cendo on 3/10/10 who recommended that I receive a total hip
> replacement. I then sent my medical records that I had copied to Dr. Davis a  Johns
> Hopkins orthopedic surgeon who confirmed Dr. Cendo's report and wrote a letter
> stating that I need the total hip replacement surgery.  I followed this up with a letter
> written by Warden Hershberger to Mr. Greg Davis, CMS Health Services
> Administrator the week of April 12, 2010, stating that I should be given the hip
> replacement surgery.  Mr. Davis sent Mrs. Louise Vest to interview me approximately
> April 17, 2010. who assured me that I would receive the surgery, but I first needed to
> comply with Dr. Tessema's decision to undergone [sic] physical therapy for six
> weeks.  I completed the first session of therapy but that only aggravated my condition
> and on July 15 Dr. Menon told me to sign off this therapy and that on July 20 he was
> once again going to submit my medical case to his board superiors and inform them
> that I need the surgery.  On July 21, 2010 I was informed that only Dr. Tessema can
> approve this surgery and that he now has the file. On July 30, 2010, I was informed
> that Dr. Tessema disapproved the surgery.

ECF No. 45, Exhibit A, pp. 2-3.

The ARP did not allege that Secretary Maynard or DPSCS was responsible for any

wrongdoing. *See id*.  The ARP was investigated. *See id*. p. 4.  On October 21, 2010, the Warden

dismissed the ARP because Bratt had been approved for surgery after completion of conservative

methods of treatment.  ECF No. 45, p. 2.

Bratt appealed the Warden's decision to the Commissioner of Correction.   The

Commissioner dismissed the appeal because Bratt's hip replacement surgery had been approved on

December 14, 2010.  *See id*. pp. 5-6.  The Commissioner's response stated in part that "[t]he

determination of when surgical intervention is medically necessary rests with those licensed to

diagnose and treat disease. You have failed conservative therapy and therefore on 12/14/10, following a review of your case by a non-CMS, non Wexford physician, your hip surgery has been authorized and will be scheduled." *Id*. p. 9. No further appeal was taken.

### D. Bratt's Motion for Summary Judgment

The gravamen of Bratt's claims is that defendants' prescription of various nonsurgical modalities to treat his hip condition before approving surgery caused him needless suffering and the loss of two inches of height. ECF No. 34. Memorandum, pp. 5-6. He asserts these treatments did little to alleviate his pain and in some cases, aggravated his problems. *See id*. p. 7. He notes that Drs. Menon, Joubert, Cendo all recommended him for a THR. Bratt has also submitted a letter dated March 27, 2010, from Randy Davis, MD, an orthopedic surgeon who reviewed Bratt's radiologic report and Dr. Cendo's March 10, 2010 report. Dr. Davis wrote "It has been my experience in 30 years that with these classic findings as demonstrated by an experienced orthopedic surgeon like Dr. Cendo that the correct and most efficacious procedure for this man [Bratt] would be a total hip replacement." The letter continues, "I would strongly recommend that this be made available to him as I believe it is extremely unlikely that psychiatric treatment[14] or pain management will make any progress with this condition." ECF No. 34, Exhibit B.

Bratt rejects assertions by defendants that "Dr Tesseme [sic] and Mr. Greg Davis have no say in what Wexford does and cannot make them approve anything like surgeries for inmates, and Wexford['s ] claims that Wexford can only approve whatever recommendations are made by medical staff." ECF No. 34, Memorandum p. 8. Bratt posits that defendants provided him with healthcare procedures that gave the appearance of care, but have did nothing to alleviate his "nearly two years of excruciating pain and suffering while he waited for a THR." *Id*. p. 9.

---

[14] There is no record before the court that mental health treatment was prescribed or necessary for Bratt's condition.

**II.     Standard of Review**

**A.  Summary Judgment**

Rule 56(a) & (c) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

This does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

The party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323  (1986).  Once the moving party has met that burden, the non-moving party must come forward and demonstrate that such an issue does, in fact, exist. *See Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).*  "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club,*

*Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)); *see also Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

The court generally must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party.  *See Scott v. Harris,* 550 U.S. 372, 376-77 (2007).  However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Id.* at 380.

### B.  Eighth Amendment

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  When prison officials  show "deliberate indifference" to a prisoner's "serious medical needs," their actions or omissions give rise to an Eighth Amendment violation. *Id.* at 104.  The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.  *See Miltier v. Beorn,*  896 F.2d 848, 851 (4th  Cir. 1990).  A defendant must know of and disregard an excessive risk to inmate health or safety.  "[T]he [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  *Farmer v. Brennan*, 511 U. S. 825, 837 (1994).   Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms.  *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).  Mere negligence or malpractice does not rise to a constitutional level.  *See Miltier v. Born,* 896 F.2d 848 (1990).   An inmate's disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action.  *See Wright v. Collins,* 766 F.2d 841, 849

(4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

## III.   Discussion

### A.  Claims Against Wexford

Bratt complains that he was not provided the total hip replacement surgery recommended for him after evaluation by Dr. Cendo.  Bratt contends that despite Dr. Cendo's recommendation and the findings of CMS providers, he was referred by Wexford to a physiatrist for pain management and other modalities as an alternative to surgery.

Bratt's hip problems were brought to the attention of medical providers in July of 2009. Since then, his condition and resultant pain have been assessed and treated by several medical practitioners, including specialists in orthopedics and physiatry with medications, steroid injections, physical therapy and other courses of conservative treatment. Dr. Worrell, a consulting orthopedist, recommended additional treatment and pain management in an effort to postpone the hip transplant in light of Bratt's age and in order to prolong the life of the hip prosthesis.

After completing conservative treatment without significant improvement, Bratt was approved for a THR.   Bratt's disagreement with the course and length of his conservative treatment, however does not amount to a claim of constitutional magnitude.[15]  Bratt does not have a constitutional right to demand immediate surgery nor does he establish that defendants purposefully acted to aggravate his condition by providing him with nonsurgical modes of treatment. The record does not suggest Wexford acted with requisite deliberate indifference to Bratt's serious medical needs to establish a constitutional violation.   When conservative nonsurgical treatment proved unsuccessful, Bratt was re-evaluated and approved for surgery.

---

[15]  To the extent Bratt might state claims of negligence or malpractice, he may file for relief in the appropriate state forum.  This court expresses no opinion as to the merit of such claims.

As earlier noted, Wexford does not directly provide medical care or clinical services to inmates. *See supra* p. 2.   Wexford is a corporate entity which acts only through its employees and agents. Bratt does not premise his claims of liability on specific acts or omissions by Wexford; therefore, the liability alleged is vicarious in nature.   To the extent the complaint names Wexford solely upon vicarious liability, it is well settled that respondeat superior[16]  does not apply to 42 U.S.C. § 1983 proceedings. *See Monell v. Department  of Social Services*, 436 U.S. 658, 690–95 (1978); *Austin v. Paramount Parks, Inc*., 195 F.3d 715, 727–28 (4th Cir.1999); *Powell v. Shopco Laurel Co*., 678 F.2d 504, 506 (4th Cir.1982).  For these reasons, Wexford is entitled to dismissal.

**B.  Claims against Medical Defendants**

Bratt claims that the Medical Defendants have provided constitutionally inadequate medical care for his hip condition.  Bratt does not dispute that he has been evaluated for his hip condition and consequent pain and treated with medication, physical therapy, cortisone injections, and other conservative courses of treatment. He has been provided multiple consultations with orthopedic surgeons and a physiatrist to determine if and when a hip replacement is appropriate.

Bratt fails to establish that Dr. Tessema or Mr. Davis consciously disregarded a substantial risk of serious harm or acted in any manner "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851.  Bratt's medical records and Dr. Tessema's affidavit show that he was monitored, evaluated, and treated for his hip condition.   There is no evidence of deliberate misconduct by the Medical Defendants. Bratt's dissatisfaction with the course of his treatment is insufficient to support a claim under § 1983 against Dr. Tessema or Greg Davis.

---

[16]  Respondeat superior is a legal doctrine whereby an employer may be held responsible for its employees.

In sum, Bratt fails to establish that either Dr. Tessema or Mr. Davis acted with deliberate indifference towards his serious medical needs, and the Medical Defendants are entitled to judgment in their favor as a matter of law.[17]

### C.  Claims Against Secretary Maynard

Bratt does not assert that Secretary Maynard's conduct was wrongful or caused him injury, nor does he claim that Secretary Maynard personally participated in his medical treatment, interfered in his care, or was deliberately indifferent or tacitly authorized unlawful actions.  As such, no claim is made against Secretary Maynard under a theory of supervisory liability. *See e.g. Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1996).

Prison officials cannot be held liable for actions or failures to act on the part of the medical staff nor can they be held liable for relying on the professional medical judgment of health care providers employed by the prison to care for inmates.[18] *See Vinnedge v. Gibbs*, 550 F.2d at 928 (4 Cir. 1977); *see also Carter v. Morris*, 164 F.3d 215, 220-21 (4th Cir. 1999).  Supervisory officials can only be liable where it is shown they failed to timely provide needed care, deliberately interfered with doctors' performance, or tacitly authorized or were deliberately indifferent to prison physicians' constitutional violations.  *See Miltier*, 896 F.2d at 854-55.  Consequently, Secretary Maynard is entitled to judgment in his favor as a matter of law.

---

[17]  To the extent Bratt might intend to assign liability to CMS which administers medical care only through its agents and employees, CMS is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727–28 (4th Cir.1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir.1982).

[18]  Bratt's new claims concerning alleged failure by prison officials to assign him to a cell located in an area to minimize necessary walking may be raised in a separate complaint.  They are not appropriately raised for the first time in a motion for summary judgment (ECF No. 47) and will not be considered here.

**IV.      Conclusion**

For the reasons stated above, the court will grant defendants' motions for summary judgment and  deny plaintiff's motions for summary judgment. Judgment will be entered in favor of all defendants.  Counsel for the medical defendants shall submit a status report within twenty-eight days to inform the court whether plaintiff has been provided a THR.  A separate order follows.

September 6, 2011                                         /s/
Date                                                                Catherine C. Blake
                                                                      United States District Judge